MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WOODRUM/AMBULATORY )
SYSTEMS DEVELOPMENT, LLC, )
a Nevada limited liability company, and )
DAVID WOODRUM, )
                                          )
            Plaintiffs, )
                                          )
vs. ) No. 08 C 1721
                                          )
LAKESHORE SURGICAL, LLC, an )
Indiana limited liability company, et al., )
                                          )
           Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Woodrum/Ambulatory Systems Development, LLC ("WASD") and David Woodrum ("Woodrum") filed an eight-count complaint against defendants Lakeshore Surgicare, LLC ("Lakeshore"), REASC, LLC ("REASC") (together the "institutional defendants"), and nine individual physicians[1] (collectively, "physician defendants"), arising from the failure of a proposed venture to open an ambulatory surgical center in Chesterton, Indiana.[2] Before the court are physician defendants' motions to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and (3), and institutional defendants' motion to dismiss for improper venue and alternative motion to transfer pursuant

---

[1] The individual defendants are Anton Thompkins, M.D.; Bruce Thoma, M.D.; David Musgrave, M.D.; James Malayter, M.D.; George Alavanja, M.D.; Marc Bruell, M.D.; Michael Leland, M.D.; Thomas Kay, M.D.; and Paul Gruszka, M.D.

[2] The claims all arise under Illinois law. Count I alleges breach of the Lakeshore Operating Agreement against the physician defendants; Count II alleges (as an alternative to Count I) breach of oral partnership agreement; Count III alleges breach of fiduciary duty against the physician defendants; Count IV alleges fraudulent misrepresentation against the physician defendants and Lakeshore; Count V alleges fraudulent concealment against the physician defendants and Lakeshore; Count VI alleges unjust enrichment against all defendants; Count VII requests an action for equitable accounting against all defendants; and Count VIII alleges civil conspiracy against all defendants.

to 28 U.S.C. §§ 1404 and 1406. Plaintiffs have also filed a cross-motion for leave to conduct discovery on the issue of personal jurisdiction in the event the court does not find that it has personal jurisdiction over defendants. Because we find personal jurisdiction has been established here, defendants' motions are denied and plaintiffs' motion is denied as moot.

## Background

Plaintiff WASD is a Nevada limited liability company ("LLC") (plfs.' cplt. ¶ 1). Its members and managers are citizens of Illinois, California and Texas, and it has an office in Chicago (*id.*). It is in the business of developing, operating, managing and owning ambulatory care centers, including ambulatory surgical centers. Woodrum is a partner in WASD (plfs.' response, exh. A-3).

Physician defendants are all Indiana residents (plfs.' cplt. ¶ 5). Lakeshore is an Indiana LLC whose members are citizens of Indiana. REASC is an Indiana LLC that held title to the real estate underlying the ambulatory surgical center that is the subject of this suit (the "project" or "Lakeshore ASC"). Physician defendants were all partners in the project and/or members of Lakeshore or REASC.

Sometime during the summer of 2003, attorney and developer Cliff Fleming, who represented himself and the physician defendants, initiated meetings with Woodrum about plaintiffs' possible involvement in a new ambulatory surgical center in Northwest Indiana (Declaration of David Woodrum, plfs.' response, exh. A, ¶ 4). The meetings took place in Chicago *(id.)*.

As the negotiations progressed, Lakeshore was represented by attorneys working in the Chicago office of McGuire Woods (*id.* at ¶ 6). In 2004 the attorneys sent Woodrum a draft letter of intent stating that WASD would have a 20% share in the project (*id.* at ¶ 7). In late

September 2005, the attorneys sent Woodrum a draft operating agreement that also stated that WASD would have a 20 percent share in Lakeshore (plfs.' cplt. ¶ 10). Both documents stated that they were to be governed by the laws of Indiana (plfs.' response, exh. A-1). The physician defendants confirmed WASD's ownership interest orally at an October 2005 meeting between plaintiffs and defendants (plfs.' cplt. ¶ 11).[3] Defendants claim, and plaintiffs do not dispute, that these agreements were never signed and that plaintiffs never paid in their 20% investment (Affidavit of Anton Thompkins, M.D., physician defendants' mem., exh. B, ¶ 10).

During the negotiations between WASD and defendants, WASD representatives communicated with physician defendants and their attorneys about the project – often while working in WASD's Chicago office (Woodrum dec. ¶ 8). WASD employees worked on the project from WASD's Chicago office, and on several occasions traveled from Chicago to Indiana for that purpose (*id.* at ¶ 13). Physician defendants called Woodrum in Chicago, sometimes as often as twice per week (*id.* at ¶ 14). Woodrum also spoke with other administrative staff at Lakeshore (*id.*).

On December 15, 2005 the members of Lakeshore voted to pursue a proposal from another entity to purchase the Lakeshore center (Thompkins aff. ¶ 11). No WASD representative was present. On December 27, 2005 Thompkins asked Woodrum to meet for lunch in Chicago (Woodrum dec. ¶ 10). At that meeting Thompkins confirmed WASD's 20% membership in the project and said that in the event the Lakeshore center was sold, WASD would be compensated based on its 20% share and would be reimbursed for expenses it

---

[3] The other investors in the project were eleven doctors, nine of whom are the physician defendants in this case. Each of them was to have a 7.27% share.

incurred (*id.* at ¶ 12).[4] Shortly thereafter, the center was sold.

In reliance on defendants' representations, plaintiffs dedicated employees from WASD's Chicago office to work on the project; spent $10,000-$20,000 on legal fees, travel costs, and other expenses to further the project; provided consulting services from WASD's Chicago office; and diverted WASD resources away from other actual or potential opportunities (plfs.' cplt. ¶ 12). Defendants have not distributed any proceeds from the sale to plaintiffs or reimbursed them for expenses they incurred.

In addition to the negotiations surrounding the project, the parties entered into a separate contract in August 2004 for WASD to serve as an outside consultant on the operational development for the Lakeshore ambulatory surgical center. After the parties' relationship soured, they submitted to arbitration at WASD's request, and WASD was awarded $14,000 in a settlement agreement signed in October 2007. The agreement stated that the parties released one another from "any and all claims, demands or causes of action related in any way to, or arising out of" the consulting arrangement (physician defs.' mot. for sum. jdgmt., exh. D). The release, however, does not apply to claims that "do not arise under" the consulting arrangement (*id.*).

Plaintiffs filed their complaint in this court on the basis of complete diversity between the parties pursuant to 28 U.S.C. § 1332(a)(1). For purposes of diversity, the citizenship of a limited liability corporation ("LLC") is the citizenship of its members. <u>Cosgrove v. Bartolotta</u>, 150 F.3d 729, 731 (7th Cir. 1998). Since WASD has no members residing in Indiana, and all defendants are citizens of Indiana, there is complete diversity here.

---

[4] Thompkins disputes Woodrum's account of the December 27 meeting. He claims that he informed Woodrum of Lakeshore's decision to sell the center when they met (Thompkins aff. ¶ 11).

## Discussion

The plaintiff bears the burden of making a prima facie case of jurisdiction. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). The well-pleaded allegations of the plaintiff's complaint must be accepted as true. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). When the defendant submits affidavits or other evidence in opposition to the exercise of personal jurisdiction, however, the plaintiff must go beyond the pleadings and submit affirmative evidence in support of jurisdiction. Purdue Research Found., 338 F.3d at 783. The plaintiff is entitled to the resolution of any conflicts in the affidavits or other evidence in its favor. Id.

### I. Personal Jurisdiction

Plaintiffs claim this court has jurisdiction over the defendants based on three prongs of the Illinois long-arm statute, 735 ILCS 5/2-209.[5] In addition, jurisdiction may also be proper under the so-called "catch all" provision of the statute, which permits courts to exercise jurisdiction on any basis permitted by the Illinois and U.S. Constitutions. Kinslow v. Pullara, 2008 WL 3519882, *3 (7th Cir. Aug. 14, 2008). The Seventh Circuit has found no "operative difference" between the limits imposed by the Illinois constitution and the federal limits on personal jurisdiction; therefore, the inquiry under Illinois law may be collapsed into the federal constitutional analysis. RAR v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997).

For the exercise of jurisdiction to satisfy constitutional due process requirements, the defendant must have minimum contacts with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v.

---

[5] Plaintiffs claim this court has specific jurisdiction pursuant to §§ 2-209(a)(2), 2-209(a)(7), and 2-209(a)(11) of the long-arm statute.

Washington, 326 U.S. 310, 316 (1945) (citation omitted); Kinslow, 2008 WL 3519882 at *4. The defendant's contacts must not be merely random, fortuitous, or attenuated, but, rather, must demonstrate that the defendant has purposefully availed itself of the privilege of conducting business in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). The main factor in the due process analysis is not physical presence but rather foreseeability; that is, whether the defendant could reasonably have anticipated being haled into court in the forum state. Id.; Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 283 (7th Cir. 1990).

In addition, the extent of the minimum contacts required depends on whether the court is exercising specific or general jurisdiction. RAR, 107 F.3d at 1277. A court has specific jurisdiction over a defendant if the suit arises out of or relates to the defendant's contacts with the forum state. Bolger v. Nautica Int'l, Inc., 861 N.E.2d 666, 671 (Ill. App. 2 Dist. 2007); Kinslow, 2008 WL 3519882 at *4. For general jurisdiction to be appropriate, the defendant's contacts must be so continuous and systematic that it would be permissible to exercise jurisdiction over it even in cases that do not arise out of nor are related to the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 468 U.S. 408, 414 (1984); Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).

Plaintiffs argue that this court may exercise both specific and general jurisdiction over defendants, but we do not agree that defendants have sufficient contacts with Illinois to warrant the exercise of general jurisdiction. Since, however, the claims here all arise out of defendants' contacts with Illinois, a finding of specific jurisdiction is sufficient to allow the suit to go forward. We believe plaintiffs have met that burden. A representative of the physician defendants reached out to WASD in Chicago about joining the project. Woodrum received

multiple phone calls in Chicago from the physician defendants and other Lakeshore employees, and Thompkins traveled to Chicago to have lunch with Woodrum to discuss the project. These contacts suggest that defendants purposely availed themselves of the opportunity to conduct business in Illinois.

In addition, defendants' Chicago-based attorneys sent plaintiffs correspondence and drafts of legal documents for the project. On these occasions the attorneys were acting as the defendants' agent. Kouba v. East Joliet Bank, 481 N.E.2d 325, 328 (Ill. App. 3 Dist. 1985) (holding that an attorney employed for a single transaction or for a series of transactions is an agent). The due process clause permits personal jurisdiction over a defendant based on the acts of its agent. Allerion, Inc. v. Nueva Icaco, S.A. de C.V., 669 N.E.2d 1158 (Ill. App. 1 Dist. 1996). The attorneys' role contributes to our finding that defendants had minimum contacts with Illinois for two reasons. First, defendants had retained counsel in Illinois, suggesting a relationship between them and the forum state.[6] Second, the attorneys' contacts with plaintiffs were not random, and the letter of intent and operating agreement were directed at WASD to ensure its participation in the project. By involving Illinois-based attorneys in the negotiations over WASD's participation in the project, defendants purposefully availed themselves of the opportunity to conduct business in Illinois.

Defendants attempt to minimize the relevance of these facts because the operating agreement was never finalized and plaintiffs never paid their 20% investment. Even if no contract was signed, the acts of defendants and their attorneys in negotiating the operating agreement, coupled with defendants' verbal confirmations of WASD's share in the project, led

---

[6] By the same token, courts have found that not having an attorney in the forum state is a factor weighing against personal jurisdiction over a non-resident defendant. See e.g. Juristech Assoc., Ltd. v. Krieg DeVault Alexander & Capehart, LLP, 2002 WL 1343746, *2 n. 1 (N.D. Ill. June 18, 2002).

plaintiffs to reasonably believe that WASD was to be a partner in the project. A sufficient number of these activities took place in Illinois to fulfill the requirements of the minimum contacts analysis.[7] This court may therefore properly assert personal jurisdiction.

II. Venue

Defendants argue that venue is improper in the Northern District of Illinois for three reasons: a "substantial part" of the alleged acts and omissions giving rise to the causes of action did not take place in Illinois; plaintiffs have not properly alleged venue in all the counts of their complaint; and plaintiffs waived venue in the Northern District of Illinois based on the forum selection clause in the settlement agreement (physician defs.' mot. for sum. jdgmt. p. 2).

Under the circumstances here, venue is only proper in this court if "a substantial part of the events or omissions giving rise to the claim occurred" in Illinois. 28 U.S.C. § 1391(b)(2). Plaintiffs bear the burden of establishing proper venue. Giordano v. City of Palm Bay, 2007 WL 4365341, *2 (N.D. Ill. Dec. 12, 2007) (citing Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969)).

We find that a "substantial part" of the alleged acts or omissions giving rise to plaintiffs' causes of action occurred in Illinois. Admittedly, this is a close question, as the Lakeshore center is in Indiana and the operating agreement would have been governed by Indiana law had it been signed. But the discussions about WASD's participating in the project were initiated by defendants' representative in Illinois, and those meetings took place in Illinois. Defendants' attorneys in Chicago prepared and sent plaintiffs drafts of the project

---

[7] Defendants contend that plaintiffs' claims stemmed from that work done under the terms of the consulting arrangement. Therefore, plaintiffs' claims are barred by the terms of the settlement agreement (physician defs.' mot. for sum. jdgmt., p. 12-13). This argument appears to be belied by the evidence of the parties' negotiations over their joint investment in the Lakeshore project. At some point plaintiffs may need to explain more fully how WASD's work under the consulting arrangement differed from that done on the project. At this stage, however, their allegations are sufficient.

agreements during the negotiations on WASD's participation in the project. Other Illinois acts include the Chicago lunch meeting between Dr. Thompkins and Woodrum, the phone calls Woodrum received in Chicago from the physician defendants and their staffs, and the work WASD employees did on the project from the Chicago office.

More acts took place in the forum state here than in Giordano, which physician defendants cite in support of their argument. 2007 WL 4365341. In that case, the plaintiff, a police officer who had been injured in the line of duty, brought various breach of contract and tort claims arising from the defendants' failure to contribute adequate disability benefits to his pension. The account to which plaintiff elected to have his contributions sent was located in Illinois. Id. at *1. The other relevant events underlying the suit – the location of the pension plan, the plaintiff's employer, the site of the plaintiff's injuries, the citizenship of the defendants, and the alleged omission – all took place in Florida. Id. at *2. Unlike Giordano, a substantial part of the events and omissions giving rise to the cause of action in this case took place in Illinois.

Second, defendants claim that plaintiffs failed to assert facts establishing venue in all but one count of the complaint. However, plaintiffs state at the outset of each count that they are adopting and realleging every preceding paragraph. This is sufficient since the allegations in paragraphs 8-19 of the complaint, along with the attachments and Woodrum's affidavit, establish venue in this court. Federal courts do not require fact pleading; the plaintiff must merely give the defendant fair notice of what the claim is and the grounds upon which it rests. Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (citation omitted). Even if plaintiffs had not properly asserted venue for each separate cause of action, under the doctrine of pendent venue, it would be appropriate for this court to hear all plaintiffs' claims.

Giordano, 2007 WL 4365341 at *2; 14D Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3808 (3d ed. 2007). Federal courts increasingly recognize that under the doctrine of pendent venue, "venue may be proper with respect to an improperly venued claim if the claim is joined to a properly venued claim, and the claims arise out of a common nucleus of operative fact." *Id.*

Finally, physician defendants claim that the clause in the Settlement Agreement stating that all actions arising from the consulting arrangement "shall be brought in the appropriate Indiana state court" is binding on plaintiffs in this action (physician defs.' mot. for sum. jdgmt., p. 11). They claim that this clause governs plaintiffs' allegations in this suit because "plaintiffs' connection with the [Lakeshore center] stemmed from the [consulting arrangement]" (physician defs.' mot. for sum. jdgmt., p. 12).

For now, however, we must accept plaintiffs' claim that there were two separate agreements between the parties, one for consulting and one for investment in the project. The settlement agreement, which resolves plaintiffs' claims under the consulting contract, does not govern causes of action arising from the investment negotiations.[8] Therefore, the settlement agreement does not require that plaintiffs' claims be brought in Indiana.

### III. Motion to Transfer Venue

In the event their motion to dismiss is denied, institutional defendants request that venue be transferred to the Northern District of Indiana, Hammond Division. A district court may transfer any civil action to another district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The purpose of this section is to prevent the waste of time, money and energy, and to protect the

---

[8] The settlement agreement explicitly states that "[t]his release shall not apply to any and all claims that the Parties may have against each other that do not arise under the [consulting arrangement]."

parties, witnesses, and the public, from unnecessary expense and inconvenience resulting from litigating in a federal district not sufficiently related to the lawsuit. <u>Mitsumi Elec. Corp. v. Wells Am. Corp.</u>, 1990 WL 114569, *5 (N.D. Ill. July 20, 1990).

The first part of the analysis under § 1404(a) is to determine whether the action could have been brought in the transferee, as well as the transferor, district. *Id.* As discussed above, venue is proper in the Northern District of Illinois, and the action could also have been brought in the Northern District of Indiana, because all the defendants reside there. 28 U.S.C. 1332(a)(1). Thus the first requirement is satisfied.

Second, the court must consider the comparative convenience of the two districts, weighing factors such as the convenience of each forum for the parties and the witnesses, and the interests of justice. The moving party must show that the transferee district is "clearly more convenient" than the transferor district. <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-220 (7th Cir. 1986). In addition, the plaintiff's choice of forum is a factor weighing in favor of not allowing transfer. <u>Mitsumi</u>, 1990 WL 114569 at *6.

Defendants argue that Illinois is less convenient for the parties and witnesses. All the defendants are citizens of Indiana, and many of the relevant records and witnesses are located in Northwest Indiana. Plaintiffs, however, name four Illinois residents who are likely witnesses (Woodrum dec. ¶ 14). Thus, witnesses will be required to come to court from both states. Given that the Northern District of Illinois and the Northern District of Indiana border on one another, and the Hammond Division is just over the Illinois line in Indiana, it would not be a major inconvenience to require defendants, and the Indiana-based witnesses, to come to Chicago.

Defendants also claim that the Northern District of Indiana better serves the interests

of justice because Indiana law is likely to apply (institutional defs.' mot. for sum. jdgmt., p. 13). It has not been established, however, that Indiana law would govern in this case. First, as explained earlier, the choice-of-law provision in the settlement agreement does not govern plaintiffs' claims arising from the project. Second, courts in the Northern District of Illinois have had ample experience applying substantive Indiana law, as they are required to do when sitting in diversity under <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938). Third, before undertaking a choice-of-law analysis, it must be determined that a conflict exists between the law of the two states in question. <u>Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.</u>, 782 N.E.2d 895, 899 (Ill. App. 1 Dist. 2002). Defendants have not explained how Illinois and Indiana law conflict on any of the counts in plaintiffs' complaint. *Id.* This factor, then, does not warrant transferring the case to the Northern District of Indiana.

Given that the two districts seem relatively balanced in terms of convenience, we resolve the motion in favor of plaintiff's choice of forum. As such, this case will remain in the Northern District of Illinois.

## Conclusion

For the foregoing reasons, defendants' motions to dismiss and to transfer venue are denied. Plaintiffs' cross-motion seeking leave to conduct discovery on personal jurisdiction is denied as moot.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____ Jan. 28 , 2009.
January 28, 2009